Second.   That Hitt employed Logan and Wiltshire to assist him in prosecuting these claims of the State of Illinois against the United States government.

---

ISAAC R. HITT, ET AL

*v.*

THE STATE OF ILLINOIS.

*Opinion filed December 30, 1898.*

*Separate opinion by W. C. Jones.*

1. STATUTE OF LIMITATIONS—*act of 1847 still in force.* The limitation act of 1847 has not been repealed directly or by implication, but is still in force.

2. FEES AND SALARIES—*contracts with State agents must be made by express authority of law.* In order that a State agent such as is under consideration in this case, may receive compensation for his services, his contract must have been made under express authority of law.

The real claimant, Mr. Isaac R. Hitt, alleges that he was appointed agent of the State of Illinois by Governor Beveridge in the year 1875, for the purpose of collecting all claims due the State from the general government growing out of the war of 1861.   In order to ascertain what that appointment was, and the scope of the authority under the same, it may be stated here that the certified copy of the commission issued by Governor John L. Beveridge in 1875, simply appointed Mr. Isaac R. Hitt, State agent to look after the interests of the State growing out of the Swamp Land Act of 1850 and the amendments thereto.

Mr. Hitt in his testimony states that he acted as agent of the State under this authority from the date of his appointment to the present time; that his services began in 1875 and that he had examined at least two wagon loads of records, embracing claims to the amount of $4,000,000.00 paid and unpaid to the State; that he had three personal claims in his charge, viz:

First: Claim for balance due on account of advances made by the State to the United States under the act of Congress approved July 27, 1861; under which act he succeeded in collecting in 1890 items amounting to $1,532.92 which has been paid into the State Treasury.

Second: A claim amounting to $1,146,551.33 which was the direct tax paid by the State of Illinois. The State, however, having received a rebate of 15 per cent the amount actually paid by the State was only $974,-568.03. This amount, $974,568.03, was finally repaid to the State under the act of Congress approved March 22, 1891.

It was for the collection of this direct tax claim, Mr. Hitt says much of his time was given during the years 1877, 1878 and 1879 and up to 1891, when the claim was finally paid to the State.

Third: The claim of 5 per cent for public lands lying within the limits of the State upon which land warrant entries were made. This claim is still unpaid and approximates about $1,000,000.00.

It will be perceived that Mr. Hitt claims that he gave most of his time and attention to the direct tax claim during the years 1877, 1878 and 1879 on up to 1891 when the claim finally passed Congress. The evidence in this claim discloses the fact that Mr. Hitt was appointed by Governor Beveridge to look after certain interests belonging to the State of Illinois, during the year 1875. His appointment, however, was simply to look after the interests of the State, growing out of the Swamp Land Act of September 28, 1850, and amendments thereto. During the years 1875, 1876 and 1877 and on up to July

28, 1880, Illinois had other State agents looking after the war claims belonging to the State.

Mr. H. D. Cook of McLean county, Illinois, was appointed State agent to collect war claims in 1867. July 2, 1878, Messrs. R. G. and E. C. Ingersoll were appointed, Governor Cullom stating at the time that there was no law authorizing the appointment. The appointment was resigned by the Hon. R. G. Ingersoll, surviving member of the firm; and, on July 28, 1880, a commission was issued by Governor Cullom to Mr. Isaac R. Hitt to appear as agent or attorney of the State of Illinois in any department of the United States government and to secure amounts and payments that might be due or owing from the United States to the State of Illinois on account of expenses, costs and charges incurred by the State in the war of the Rebellion. The commission contained this clause: "This authority is given with the express understanding that no liability will be created under it against the State, for costs and expenses of any kind whatever." It will thus be seen that Mr. Hitt had no semblance of authority to act for the State until this appointment. The appointment made by Governor Beveridge in 1875 was for no other purpose than looking after the interest of the State growing out of the Swamp Land Act.

Mr. Hitt in his testimony states, "that Gen. Logan, Judge Wiltshire and myself participated time and again during the years 1877 and 1878 and since that time Judge Wiltshire and myself appeared in connection with other agents before committees of Congress" to secure payment of claim belonging to Illinois. He states that the work done by him in connection with the direct tax was done in 1877. "At that time I employed Logan and Wiltshire to assist me in that claim; in 1877, Logan, Wiltshire and myself went to the war department to obtain data for full understanding of the merits of this claim."

Mr. Hitt evidently supposed at that time he was acting as State agent for Illinois, for the purpose of securing all

claims due from the general government to the State, but the records and files introduced in evidence show otherwise, and that he never received any authority to act and never had any appointment until July 28, 1880.

Mr. Hitt in his testimony further says: "During the years they worked together neither Logan nor Wiltshire were in the service of the United States in any capacity. Both did faithful work and I promised them that whatever the Legislature of Illinois might give me for services, as agent of the State, I would give them each one-third of the sum. That contract was verbal. Never reduced it to writing." In this connection it will be well to see what work Gen. Logan was authorized to do at that time by the State of Illinois. It has already been seen that Mr. Hitt was authorized only to look after the Swamp Land interests of the State. The records of the executive office of 1878 show that on February 28th, the Governor appointed Hon. John A. Logan agent of the State of Illinois to collect and receive any moneys recoverable from the United States on account of military locations of lands in the State of Illinois under an act of Congress. Under that appointment Gen. John A. Logan acted as agent for the State of Illinois until his election to the United States Senate; when Governor Cullom, December 27, 1879, appointed "Judge Wiltshire, of Washington City, D. C., as agent of the State of Illinois, to collect and receive any moneys recoverable from the United States on account of military locations of lands, in the State of Illinois, under an act of Congress, in place of Hon. John A. Logan, who has resigned." From that time on Gen. John A. Logan was a member of the United States Senate and his former partner, Judge Wiltshire, represented the State as State agent for the purpose for which he was appointed, viz: to collect and receive any moneys recoverable from the United States on account of military locations of lands in the State of Illinois under act of Congress.

The evidence shows that Gen. John A. Logan died on or about the ... day of ........ 1886, and that Judge

Wiltshire died on or about the ... day of ........ 1890. The evidence shows that Logan and Wiltshire prosecuted the claim for which they were agents until they reached a decision which was adverse in the Supreme Court of the United States. With the exception of Mr. Hitt's testimony there is no direct evidence showing that they ever had any connection with any claims in favor of the State against the United States except the one for which they were appointed agents.

The evidence shows that Mr. Hitt requested Governor John M. Hamilton to appoint him State agent to prosecute any and all claims due the State of Illinois growing out of the war of 1861; and, in reply to the request Governor Hamilton stated to Mr. Hitt, he had no authority given him, either by joint resolution or by an act of the Legislature, authorizing him to make the appointment.

It will be seen then that Governor John M. Hamilton when requested gave it as his opinion that he had no authority to make such an appointment and declined to act, and had there been authority in the first instance to make the appointment it would not have been necessary to have asked for reappointment, for such authority would have held good until the same was revoked.

One more reference to the evidence of Mr. Hitt. The evidence I refer to was introduced by the State and is a letter from Mr. Hitt to Governor Oglesby. This letter was dated February 24, 1886, and is a very important link in the testimony offered by the State. We quote: "The bill 164 provides to credit or repay each State the direct war tax in toto. The Illinois M. C. are not a unit on this question and some of them have come to no conclusion. Shall I favor or oppose it? The southern members generally are favoring the bill. I should be pleased to receive any advice or instruction you may give me."

Judging from the language used by Mr. Hitt at this time he was in doubt as to what course he should take;

and, had Governor Oglesby written back to him, "Oppose bill 164," Mr. Hitt would have lent opposition to the bill; and yet, bill 164 was the first bill introduced in to Congress authorizing the repayment of the "direct tax" to the States.

During the year 1886 Gen. Logan was a member of the Senate and died during that year. If Mr. Hitt was undecided at that time in regard to his course, it must be conceded his recollection may be a little at fault in regard to transactions which had previously taken place.

There is still another document, A Memorial to the 40th General Assembly, by Mr. Hitt, from which we quote: "I am not desirous personally to have anything further to do with the settlement of this account of the State against the United States, but would like to be paid whatever the Legislature may see proper to pay me for services performed and for the $400.00; and to pay me ten per cent on the $1,532.92 and I will be satisfied." Mr. Hitt has previously in this memorial complained that he has expended $400.00 in money; and, that the Legislature had made no appropriation to reimburse him for his expenses, nor had that body passed any act appropriating money to pay the per cent which he demanded on the amount he had collected for the State; and, he states in his memorial, if the State will pay him $553.29, he will be satisfied, and will not seek to act further as State agent; but, advises the Legislature there are other claims and the State should look after them.

### THE STATUTE OF LIMITATIONS.

The limitation act of 1847 is pleaded in bar of this claim; and, a demurrer is filed to the plea. The demurrer is not well taken. The limitation act of 1847 is not repealed directly or by implication, but is still in force. But there is an objection to the allowance of any item in this case which seems insurmountable. A constitutional barrier. Section 19 of article 4, of the Constitution of Illinois, adopted 1870, provides, that

"The General Assembly shall never grant or authorize extra compensation, fee or allowance, to any public officer, agent, servant or contractor, after service has been rendered, or a contract made, nor authorize the payment of any claim, or part thereof, hereafter created against the State, under any agreement or contract made without express authority of law; and all such unauthorized agreements or contracts shall be null and void; provided, the General Assembly may make appropriations for expenditures incurred in suppressing insurrections or repelling invasions." No contract was ever made with Mr. Hitt or with Messrs. Logan and Wiltshire, nor could any legal contract have been made, for the reason there is nothing in all the evidence introduced showing that the General Assembly of Illinois, at any of its sessions, had ever passed a joint resolution or an act authorizing the appointment of any State agent for the purpose of collecting any of the claims for which Mr. Hitt now claims payment for services. That there was no law authorizing these appointments seems to have been well understood by the Governors appointing for the appointments all expressly state, that the State of Illinois shall not be held liable for any costs or expenses incurred of any kind whatever.

Claim denied.